UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MARCIE VELVET CLAYTON, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | No. 1:17-cv-275, 1:15-cr-50<br><br>Judge Mattice<br>Magistrate Judge Lee |

## **MEMORANDUM OPINION**

On October 2, 2017, federal inmate Marcie Velvet Clayton filed a motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. Clayton argues she was deprived of her right to effective assistance of counsel due to her trial counsel's failure to properly advise her during the plea negotiations and failure to file a direct appeal on her behalf. [Doc. 1]. As ordered, the United States filed a response to Clayton's Motion [Doc. 4], to which she replied [Doc. 5]. She has since filed two motions to amend [Docs. 8 & 13], a motion seeking permission to serve discovery on her former counsel [Doc. 11], and several other motions.

Having considered the pleadings and the record, along with the relevant law, the Court finds there is no need for an evidentiary hearing[1] and Clayton's § 2255 motion

---

[1] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

[Doc. 1] will be **DENIED**. The motions to amend [Docs. 8 & 13] and will likewise be **DENIED** and her motion for discovery [Doc. 11] **DENIED AS MOOT**.

I.     BACKGROUND FACTS AND PROCEDURAL HISTORY

On April 28, 2015, a grand jury indicted Clayton on one count of conspiracy to distribute 50 grams or more of methamphetamine and possession with intent to distribute 50 grams or more of methamphetamine. [Case No. 1:15-cr-50, Crim. Doc. 22]. Pursuant to a written plea agreement, Clayton pled guilty to the conspiracy charge. [Crim. Doc. 54]. The plea agreement also reflects the Government's intent to file a § 851 enhancement:

> The United States will file an enhancement under 21 U.S.C. § 851 listing one prior drug felony conviction for the defendant. As a result of this conviction and enhancement, the punishment for this offense is as follows: Imprisonment for at least 20 years and up to life; followed by a 10-year period of supervised release; and a fine of up to $20 million dollars.

[*Id.* at 1]. The agreement also indicates the Government would move to dismiss the remaining counts at sentencing. [*Id*]. In the plea agreement, Clayton also waived her right to file any motions pursuant to § 2255 other than those alleging prosecutorial misconduct or ineffective assistance of counsel. [*Id.* at 7]. The presentence report indicates a statutory mandatory minimum of 20 years imprisonment, resulting in a functional guideline range of 240 months. [Crim. Doc. 108 at 15]. Absent the enhancement, Clayton's guideline imprisonment range would have been 135 to 168 months. [*Id.*].

On March 21, 2016, the Court granted a Government motion for downward departure and sentenced Clayton to 135 months' imprisonment and 5 years of supervised release. [Crim. Doc. 113 at 2]. Clayton did not appeal and her conviction therefore became final on April 4, 2016.

2

On October 2, 2017, Clayton's Motion to Vacate [No. 1:17-cv-00275, Doc. 1] was docketed. The Motion was executed by Clayton on September 25, 2017. [*Id.*]. Clayton concedes her motion is untimely, but argues it is "due in part to the transfer of prisoners, and because of a delay in receiving her legal work to proceed." [*Id.* at 12]. Her motion raises two ineffective assistance of counsel arguments. First, she argues she was deprived of her right to effective assistance of counsel because her trial counsel failed to advise her "about the most likely consequence she was facing if she rejected the government's first plea agreement, because counsel failed to mention that she would be facing a mandatory minimum of 20 years to life under an 851 enhancement." [*Id.* at 4]. For her second ground, she says she instructed her trial counsel to file and prosecute a direct appeal and he did not do so. [*Id.* at 5].

The Government argues Clayton's motion is untimely and that she is not entitled to equitable tolling. [Doc. 4]. It concedes that if timely, an evidentiary hearing on the motion is required.

## II.   LEGAL STANDARD

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). A court may grant relief under 28 U.S.C. § 2255, but the statute "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, collateral attack limits a movant's allegations to those of constitutional or jurisdictional magnitude, or those containing factual or legal errors "so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation omitted); *see also* 28 U.S.C. § 2255(a).

3

## III. ANALYSIS

### A. Motion to Vacate

Petitioner's collateral attack is time-barred and she has not presented any justification for tolling the limitations period. Section § 2255(f) gives a federal defendant one year to file a motion to vacate. That time period begins from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Petitioner did not take a direct appeal and her conviction therefore became final fourteen days after its entry, when the time to file a direct appeal expired. *See* Fed. R. App. P. 4(b)(1)(A) (providing fourteen days for direct appeal); *Sanchez-Castellano v. United States*, 358 F.3d 424, 427 (6th Cir. 2004) ("[W]hen a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal is filed."); *Blain v. United States*, 766 F. App'x 327, 329 (6th Cir. 2019) (absent direct appeal, conviction became final fourteen days after judgment was entered). Petitioner was required to file her motion to vacate within one year of April 4, 2016, unless a different subsection of 2255(f) renders her petition timely.

4

Clayton argues equitable tolling should apply to her late-filed petition. She says she was in transit for more than 120 days and did not receive her legal materials for another 60 days. [Doc. 2 at 10]. She says the county jail (in which she was presumably incarcerated during transit) did not have adequate legal materials and she did not have access to her own. [*Id.*]. She does not explain why she was unable to prepare her petition during the 60 days in which she waited for her personal legal materials, or in the six to eight months in which she was neither in transit nor awaiting her personal effects. She does not claim that she was unaware of the filing deadline.

"Courts grant equitable tolling 'sparingly,' and a habeas petitioner is entitled to equitable tolling only if he shows that (1) 'he has been pursuing his rights diligently, and (2) 'some extraordinary circumstance stood in his way and prevented timely filing.'" *Blain*, 766 F. App'x at 330 (*quoting Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749-50 (6th Cir. 2011)). The United States Court of Appeals for the Sixth Circuit has rejected equitable tolling in factual circumstances very similar to those here. *United States v. Stone*, 68 F. App'x 563 (6th Cir. 2003). In *Stone*, the petitioner filed his § 2255 motion almost eight months after his conviction became final. He argued he was unable to timely submit his motion to vacate because he was transferred from a federal prison to a state jail and was not allowed to bring his personal property or legal materials with him. *Id.* at 565. He was also not allowed to do legal research. *Id.* Stone admitted, however, that he was aware of the limitation period. *Id.* The Sixth Circuit found that "Stone had almost six months before he was transferred to... jail in which to file his § 2255 motion." *Id.* Stone also argued that he did not have sufficient library access, but "allegations regarding insufficient library access, standing alone, do not warrant equitable tolling." *Id.* The court found Stone had failed to establish that equitable tolling should apply. *Id.*

5

True, the Sixth Circuit has allowed equitable tolling where a prison transfer is accompanied by other factors beyond a petitioner's control and a petitioner's diligence is established. *Jones v. United States*, 689 F.3d 621 (6th Cir. 2012). That is not the case here. In *Jones,* the petitioner's motion to vacate was based on a new rule of substantive law announced in April 2008, but Jones was not aware of the Supreme Court's decision until May 2009. *Id.* at 627. The court acknowledged that generally, a prisoner's limited access to a law library and *pro se* status are insufficient to qualify as extraordinary circumstances to justify equitable tolling. *Id.* But Jones's ignorance of the Supreme Court decision was due in large part to four unexpected moves in the months preceding and immediately following the Court's decision, during which time he did not have his legal materials. *Id.* at 627. He was partially illiterate and relied on other prisoners for knowledge of changes in the law. *Id.* He also had a variety of medical conditions, including seizures, that required frequent medication and made it difficult for him to obtain legal information. *Id.* Finally, Jones averred that throughout his transfers, he was constantly questioning others for legal advice, and when he learned of the change in law, filed his petition within two months. *Id.*

The Sixth Circuit observed that individually, these factors might not constitute extraordinary circumstances. *Id.* at 627-28. Taken together, however, it found them sufficient, and further found Jones had demonstrated he was not sleeping on his rights. *Id.* The court reversed the district court and remanded for further proceedings. *Id.*

Similarly, in *Solomon v. United States*, 467 F.3d 928 (6th Cir. 2006), the Sixth Circuit found equitable tolling where the petitioner had limited law library access and was

6

unable to obtain his trial transcript.² As in *Jones*, Solomon's timeline was triggered by a change in the law – after the enactment of the Antiterrorism and Effective Death Penalty Act, prisoners had one year within which to bring a habeas petition.³ Solomon did not hear of the new deadline for many months due to the poor circulation of legal information in the prison in which he was incarcerated. *Id.* at 933. He averred he had worked diligently day and night, but that in the first few months of 1997, there was a huge demand for limited library resources due to the AEDPA deadline. *Id.* He was then transferred unexpectedly a month before his deadline without his legal materials. *Id.* at 934. He was placed in administrative detention, transferred again, and then transferred back to his original prison. *Id.* During this time he repeatedly sought filing information and also filed a notice of intent to file a § 2255. *Id.* He completed his petition within a month of returning to his original prison. *Id.* Under these facts, the Sixth Circuit found the petitioner was entitled to equitable tolling.

There are crucial distinctions between these cases and Petitioner's. In both *Solomon* and *Jones*, the petitioners were not initially aware that the clock had begun ticking on their rights. Their access to a law library and legal materials was thus pertinent to when they discovered the legal basis for their claims and whether they diligently pursued their motions. The *Jones* court acknowledged this distinction: "Even though knowledge of filing deadlines is no longer part of our inquiry, we note the inherent differences between when the clock starts upon the conclusion of direct appeal and when the clock starts upon issuance of a new Supreme Court case." 689 F.3d at 627 n.4.

---

² *Solomon* was decided under the obsolete five-factor test set forth in *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001), since replaced by consideration of extraordinary circumstances and due diligence. However, the Sixth Circuit has "continued to rely on its analysis of potential considerations when applying the new test." *Jones*, 689 F.3d at 628 n. 5.

³ Prior to the AEDPA, a motion under § 2255 could be brought at any time. *Id.* at n.2.

Although inmates are expected to have knowledge of both, "it would strain credulity to suggest that a defendant has the same level of access to information about the issuance of new Supreme Court cases as he does about his direct appeal." *Id.*

Here, Petitioner does not contend she was unaware of the limitations period. With respect to her contention that her lawyer failed to adequately advise her in rejecting an earlier plea deal, she would have been aware of this failure before her sentencing. Likewise, she does not allege a delay in discovering that her lawyer did not file an appeal on her behalf. In fact, Petitioner provides no timeline of her transfers or the purported delays in accessing her legal materials. She appears to allege she was unable to begin her motion for approximately 4-6 months after her sentence became final. [*See* Doc. 5 at 2 ("[D]ue diligence cannot take place until she reaches the prison.")]. She does not allege that anything prevented her from preparing and filing the motion in the 6-8 months that followed. Accordingly, she has not met her burden of demonstrating she was diligent in pursuing her claims or that extraordinary circumstances beyond her control prevented her from preparing and timely filing her petition. *See Jones*, 689 F.3d at 628.

Petitioner's reliance on § 2255(f)(2) and (4) are similarly unavailing. She has not alleged an impediment to her motion created by "government action in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(f)(2). She has simply alleged she was transferred and unable to effectively prepare her petition during that time. Likewise, she did not discover new facts supporting her claim. All of the facts relevant to her motion would have been known to her when her lawyer failed to file an appeal.

### B. Miscellaneous Motions

Clayton also filed two motions to amend. [Docs. 8 & 13]. In her first motion, she indicates that, while she is still proceeding *pro se*, she expects legal assistance and would

8

like to submit a new petition with the aid of an attorney. [Doc. 8]. In her second motion, she indicates her family and a third party have obtained case files that her former counsel allegedly did not provide to her. [Doc. 13]. She seeks leave to expand the record to submit this new information, but does not indicate its contents or significance. Neither motion presents new information or a basis for tolling the limitations period. The motions instead seek to expand upon her time-barred claims and will therefore be **DENIED AS MOOT**.

Likewise, because the motion to vacate is untimely, Petitioner is not entitled to discovery regarding her substantive claims. The Motion for Leave to Serve Interrogatories [Doc. 11] is therefore **DENIED AS MOOT** pursuant to Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

## IV. CERTIFICATE OF APPEALABILITY

When considering a § 2255 motion, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts. Petitioner must obtain a COA before she may appeal the denial of her § 2255 motion. 28 U.S.C. § 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in

9

its procedural ruling." *Id.* Based on the *Slack* criteria, the Court finds that a COA should not issue in this cause.

## V. CONCLUSION

For the reasons stated herein, Petitioner has failed to establish any basis upon which § 2255 relief could be granted, and it is therefore **ORDERED** that her § 2255 motion [Civ. Doc. 1] is **DENIED**.

It is **FURTHER ORDERED** that the Motion to Amend [Civ. Doc. 8] and Second Motion to Amend [Civ. Doc. 13] are **DENIED**; the Motion for Leave to Serve Interrogatories [Civ. Doc. 11] is **DENIED AS MOOT**.

A certificate of appealability from the denial of Petitioner's § 2255 motion will be **DENIED**. A separate judgment will enter.

**SO ORDERED** this 1st day of July, 2020.

> */s/ Harry S. Mattice, Jr.*
> HARRY S. MATTICE, JR.
> UNITED STATES DISTRICT JUDGE